1 TRACY L. WILKISON
  Acting United States Attorney
2 SCOTT M. GARRINGER
  Assistant United States Attorney
3 Chief, Criminal Division
  POONAM G. KUMAR (Cal. Bar No. 270802)
4 ROGER A. HSIEH (Cal. Bar No. 294195)
  GREGORY D. BERNSTEIN (Cal. Bar No. 299204)
5 Assistant United States Attorneys
  Major Fraud/General Crimes Sections
6      1100 United States Courthouse
       312 North Spring Street
7      Los Angeles, California 90012
       Telephone: (213) 894-0719/0600/3183
8      Facsimile: (213) 894-6269
       E-mail:    poonam.kumar@usdoj.gov
9                 roger.hsieh@usdoj.gov
                  gregory.bernstein@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

12                  UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,          No. CR 19-282-RGK

15          Plaintiff,                GOVERNMENT'S REPLY IN SUPPORT OF
                                      ITS MOTION IN LIMINE NO. 3 TO
16          v.                        ADMIT PRE-TRIAL SELF-
                                      AUTHENTICATING FOREIGN RECORDS;
17 ZHONGTIAN LIU,                     DECLARATION OF POONAM G. KUMAR
    aka "Liu Zhongtian,"
18  aka "Chairman,"
    aka "Uncle Liu,"
19  aka "UL,"
    aka "Big Boss,"
20 CHINA ZHONGWANG HOLDINGS
     LIMITED,
21  aka "ZW,"
    aka "Mother Ship,"
22 ZHAOHUA CHEN,
    aka "Chen Zhaohua,"
23  aka "Uncle Chen,"
   XIANG CHUN SHAO,
24  aka "Johnson Shao,"
   PERFECTUS ALUMINIUM Inc.,
25  aka "Perfectus Aluminum Inc.,"
   PERFECTUS ALUMINUM
26   ACQUISITIONS, LLC,
   SCUDERIA DEVELOPMENT, LLC,
27 1001 DOUBLEDAY, LLC,
   VON KARMAN - MAIN STREET, LLC,
28   and

10681 PRODUCTION AVENUE, LLC,

        Defendants.

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Poonam G. Kumar, Roger A. Hsieh, and Gregory Bernstein, hereby files its reply in support of its motion _in limine_ to admit pre-trial self-authenticating foreign records.

     This reply is based upon the attached memorandum of points and authorities, the attached declaration of Poonam G. Kumar, the files and records in this case, and such further evidence and argument as the Court may permit.


 Dated: July 26, 2021              Respectfully submitted,

                                   TRACY L. WILKISON
                                   Acting United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                         /s/
                                   POONAM G. KUMAR
                                   ROGER A. HSIEH
                                   GREGORY D. BERNSTEIN
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

The government seeks admission of self-authenticating foreign records from China Zhongwang Holdings, Limited ("defendant CZW"), a charged co-conspirator in this case.  Defendants' arguments in opposition should be rejected by this Court.

## II.  THE CZW RECORDS ARE ADMISSIBLE UNDER 18 U.S.C. § 3505

The CZW records should be admitted because the because the Changqing Lu declaration ("Lu declaration") satisfies the "statutory requirements in substance" and "confirms the accuracy" of the underlying records, which is all the Ninth Circuit requires.  United States v. Jawara, 474 F.3d 565, 584 (9th Cir. 2007).

Defendants contend that the the Lu declaration is untrustworthy.  Defendants are wrong.  (Def. Opp. At 3; CR Dkt. No. 195, Kumar Decl. Ex. A.)  Defendants claim that the lack of the four words "under the laws of China" renders the Lu declaration defective.  The Lu declaration states without equivocation that Lu signed it "under penalty of perjury" in Beijing, China.  Therefore, section 3505's requirements have been met.  At best, this is a technical distinction, which does not affect the reliability of the documents attested to by the Lu declaration.  The Ninth Circuit has held that "Congress enacted § 3505 not 'to add technical roadblocks to the admission of foreign records, but, rather, to streamline the admission of such records.'"  United States v. Jawara, 474 F.3d 565, 584 (9th Cir. 2007)(quoting United States v. Strickland, 932 F.2d 822, 831 (7th Cir. 1991).)  As such, the Ninth Circuit has held that a declaration is not defective simply because it does not exactly mirror section 3505(a)(1)'s exact language.  Id. ("Although Jouf's

attestation does not mirror the exact language of § 3505(a)(1), it satisfies the statutory requirements in substance—the certification confirms the accuracy of the test records maintained in the files of the examination agency."). The Lu declaration conforms with the requirements of § 3505 and, accordingly, the CZW records should be admitted.

Second, defendants argue that Lu is not a proper custodian because he is not a "record keeper." (Def. Opp. at 4.) Section 3505 requires the declaration be from "custodian of a foreign record" or "another qualified person." 18 U.S.C. § 3505(c)(2). As President and Chairman of the Board, Lu is certainly a "qualified person" to attest to the facts set forth therein. See United States v. Miller, 830 F.2d 1073, 1077 (9th Cir. 1987) (accepting Section 3505 certification of Vice Director of bank and noting though "a high bank officer is to be preferred to a simple employee, we do not in this case find reason to distinguish among the records introduced into evidence. All bear indicia of reliability.") (internal quotation marks omitted). Indeed, in the domestic analog to section 3505 - Rule 803(6) - the Ninth Circuit has held that "[t]he phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990) (finding that welfare fraud investigator familiar with the reporting and filing requirements for public assistance benefits was an "other qualified witness" although she was not custodian of record); United States v. Basey, 613 F.2d 198, 201 n. 1 (9th Cir. 1979) (college records properly admitted to establish defendant's address even though custodian neither recorded the information herself nor did she know who did). In the

declaration, Lu affirms that he is "knowledgeable about the matters set forth herein and the relevant records-keeping practices of China Zhongwang." (CR Dkt. No. 195, Kumar Decl. Ex. A.)  Such a statement is particularly reliable where, as here, Lu referenced in and/or signs each of the CZW records the government seeks to admit. (Declaration of Poonam G. Kumar ("Kumar Decl") ¶ 2.)   Moreover, these are not just any documents – these are defendant CZW's financial records and the primary mechanism by which the company communicates with the market in which it is publicly listed.  As such, it is axiomatic that Lu, as Chairman of the Board, would have knowledge of the authenticity and recordkeeping of these documents. The defendants next argue – without a single citation – that the simple fact that defendant CZW was under investigation means the declaration is untrustworthy.  This is nothing more than speculation. It is equally likely that the Chairman of the Board of a subject of a government investigation would be incentivized to cooperate and be truthful during an ongoing government's investigation, particularly when doing so under penalty of perjury.  At bottom, the records – each of which is publicly available on defendant CZW's website – is reliable and they should be admitted.  <u>Jawara</u>, 474 F.3d at 584 ("Further, § 3505 did not change the benchmark question in this and every situation involving the admission of documentary evidence: do the documents bear the indicia of reliability?).

Defendant next contend that the records of defendant CZW the government seeks to admit (the IPO prospectus, annual financial reports, and press releases) are not business records.  Defendants' arguments are misplaced.  As to the annual reports, the Ninth Circuit has conclusively held that annual financial statements, specifically

1  10-Ks, are admissible as business records.  SEC v. Jasper, 678 F.3d
2  1116, 1122-23 (9th Cir. 2012); see S.E.C. v. Sabhlok, 495 Fed. Appx.
3  786, 787 (9th Cir. 2012) (affirming admission of 10-K as business
4  record); Ford Motor Co. v. Auto Supply Co., 661 F.2d 1171, 1175-76
5  (8th Cir. 1981) (holding that annual Product Line Profitability
6  Analyses ("PLPAs") were admissible under Rule 803(6) where "the PLPAs
7  were kept in the course of regularly conducted business and that it
8  was an annual practice to prepare these financial statements").  In
9  Jasper, the Ninth Circuit also foreclosed remaining defendants'
10 arguments, finding that annual reports satisfied the business records
11 requirements because they were "made at or near the time of the
12 accounting review."  Id.  Defendants claim that the IPO prospectus
13 and clarification statements did not occur often so therefore are not
14 admissible as business records.  At the outset, the government notes
15 that defendant CZW released dozens of public announcements, including
16 clarification statements, during the relevant time period.  (Kumar
17 Decl. ¶ 3.)  Thus, it was clearly a regularly conducted activity of
18 the company.  Moreover, all of these disclosures, like the IPO
19 prospectus, are required disclosures for defendant CZW and are
20 routinely disclosed to the market in which defendant CZW is publicly
21 listed.  Therefore, they are records of a "regularly conducted
22 activity" of defendant CZW, as set forth in the Lu declaration.  Fed.
23 R. Evid. 803(6); notes to Fed. R. Evid. 803(6)(explaining change from
24 business records to regularly conducted business in part because
25 there was an undue emphasis on "routineness and repetitiveness"); see
26 also United States v. Jacoby, 955 F.2d 1527, 1538 (11th Cir.
27 1992)("Nonroutine records made in the course of regularly conducted
28 business should be admissible if they meet the requirements of 803(6)

4

unless the sources of information or other circumstances indicate lack of trustworthiness")(citations omitted)).  For this same reason, defendants' reliance on Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1458 (9th Cir. 1984) is misplaced.  In Paddock, the court found that the business did not regularly conduct the activity that produced the record and thus, it did not meet the requirements for 803(6).  Here, defendant CZW regularly communicates (as it is legally required to do) with the market.  Thus, the records are business records.

Lastly, defendants claim they did not have notice of the government's intention to admit these documents.  Between the numerous references to the CZW records in the indictment and the government's production of the records the Lu declaration in the first production in May 2020 – one month after defendants appeared on the indictment – defendants were on notice of the government's intent to introduce records from defendant CZW.  See United States v. Komasa, 767 F.3d 151, 155 (2d Cir. 2014) ("The district court here found that while written notice was lacking, the defendants had actual notice of the government's intent through the government's oral representations of a plan to proffer the documents as self-authenticating and also because the government provided the defendants with copies of the records and authenticating certificates."); see also United States v. Khatallah, 278 F. Supp. 3d 1, 10 (D.D.C. 2017) (holding that Section 3505(b) did not bar admission of records where defense counsel "has long been aware of the existence of the records: the Government produced the records to them in discovery nearly three years ago"); see also United States v. Clovis, No. 94-11, 1996 WL 165011, at *3 (D.V.I. 1996) ("Assuming

section 3505 does apply, the Court finds that the defendant was on notice that a foreign document was going to be introduced, because defendant was provided with a copy of the documents during discovery well before trial.").

While the government first provided written notice of its intent to introduce the records a year after arraignment, failure to provide written notice as set forth by section 3505(b) does not require the "the automatic exclusion of evidence." United States v. Newell, 239 F.3d 917, 921 (7th Cir. 2001). Rather, the remedy "is to object on the ground of prejudice resulting from the violation." Id. (finding no prejudice where, among other things, the defendant already "knew the government was going to use [the records] at trial"). There is no prejudice here, where defendants have known from before they ever appeared in this Court that the government would seek to introduce these statements. The lack of prejudice is made plain by defendants' retention of an expert to testify about the impact of the statements contained in these very records. See United States v. Kilbride, No. CR 05-870-PHX, 2007 WL 1662070, at *11-12 (D. Ariz. June 1, 2007) (finding no prejudice where government gave notice a few weeks before trial, the records were produced a year before trial, the charged included several foreign financial transactions, and defendant retained an expert to testify about the transactions). Thus, defendants' arguments regarding notice should fail. United States v. Garcia Abrego, 141 F.3d 142, 178 (5th Cir. 1998) ("[W]ere we to conclude that a failure to give timely notice of an intent to offer foreign records under § 3505 bars admission of the records pursuant to the statute, we would flout § 3505's purpose by turning a requirement intended to facilitate the admission of foreign business

records into a procedural barrier impeding their admission. The statute's legislative history indicates that Congress wished to 'promote' pretrial resolution of evidentiary disputes regarding foreign business records, not to require such resolution.").

## III. THE CZW RECORDS ARE ADMISSIBLE UNDER RULE 801

To the extent not covered by section 3505, the CZW records are admissible as non-hearsay because they are co-conspirator statements made in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E). Defendants claim that the government's reliance on Rule 801 is premature.  Here, the indictment lays out a very wide-ranging conspiracy in which multiple co-conspirators acted in furtherance of multiple conspiratorial objects (conspiracy to defraud CBP; conspiracy to commit wire fraud, customs fraud, and international promotional money laundering).  Among other statements, defendant CZW made a myriad of false statements in its IPO prospectus, annual reports, and clarification statements in furtherance of all objects of the conspiracy, including making false statements about its revenue, including "revenue" from the U.S.-based Perfectus defendants, related party transactions, and its overall ability to sell aluminum pallets in the U.S.  These statements were clearly made in furtherance of the conspiracy alleged.

In order to admit statements made in furtherance of the conspiracy, the government must establish by a preponderance of the evidence that the statement was made "during the course and in furtherance of the conspiracy." Bourjaily v. United States, 483 U.S. 171, 175-76 (1987).  Under Rules 104 and 1101(d), the Court must resolve this question and may rely on any non-privileged information regardless of its admissibility.  The Court may examine the

7

1   statements to determine whether to admit them as long as there is

2   "some independent evidence which, viewed in light of the

3   coconspirator statements, establishes the requisite connection

4   between the accused and the conspiracy."  United States v. Castaneda,

5   16 F.3d 1504, 1507 (9th Cir. 1994).  At trial, the Court will hear

6   and see such independent evidence.  In particular, multiple witnesses

7   will testify that defendants Liu and CZW exercised control over the

8   Perfectus and Warehouse defendants.  The evidence will further show

9   that defendant CZW "sold" – directly and indirectly - hundreds of

10  millions of dollars-worth of aluminum to the Perfectus defendants,

11  which defendant CZW then failed to record as related party

12  transactions, and which was stored at the Warehouse defendants.  When

13  confronted with this inflated revenue and evidence that defendants

14  Liu and CZW provided the funding for the purchase of the aluminum,

15  defendant CZW then released several false statements disclaiming any

16  connection with the Perfectus defendants.   The evidence presented at

17  trial will go beyond even this limited proffer.  Accordingly, the

18  government submits that the defendant CZW records are admissible as

19  co-conspirator statements.  To the extent the Court finds that the

20  government has not yet met this standard at the time any co-

21  conspirator statements are sought to be admitted, the Court may

22  conditionally admit the records and evidence subject to the

23  government making the requisite connection to the conspiracy.  United

24  States v. Loya, 807 F.2d 1483, 1490 (9th Cir. 1987)("A district court

25  has the discretion to vary the order of proof in admitting a co-

26

27

28

8

conspirator's statements."); <u>United States v. Vilavazo</u>, 666 Fed.
Appx. 657, 659 (9th Cir. 2016).[1]

**IV.   THERE IS NO CONFRONTATION CLAUSE VIOLATION WITH ADMISSION OF THE
CZW RECORDS**

Defendants also contend that admission of the Lu declaration and
the CZW records would violate the Confrontation Clause.  Defendants'
arguments fly in the face of binding Ninth Circuit precedent.  As a
threshold matter, the declaration is not being admitted into evidence
and, as such, it is not testimonial.  Thus, Ninth Circuit has held
that custodian declarations submitted under § 3505, as well as the
domestic analog under Rules 902(11) and 803(6), "do not '<u>create</u> a
record for the sole purpose of providing evidence against a
defendant.'"  <u>Ankewu</u>, 695 F.3d at 974-75 (holding that the
information in the declaration "does not interpret what the records
contain or certify their substance or effect"); <u>United States v.
Hagege</u>, 437 F.3d 943, 958 (9th Cir. 2006) ("We conclude therefrom
that foreign business records admitted under § 3505 are not subject
to the <u>Crawford</u> requirement of confrontation."); <u>see also</u> <u>United
States v. Al-Imam</u>, 382 F. Supp. 3d 51, 59 (D.D.C. 2019) ("Every court
that has addressed this issue has concluded that admission of
certifications provided pursuant to Rule 803(6)—including § 3505 and
its analogs in Rules 902(11) and (12)—does not pose Confrontation
Clause problems.") (citing <u>Anekwu</u>, 695 F.3d at 972; <u>United States v.</u>

---

[1] If the Court denies the government's motion based on section
3505, defendants ask the Court to defer ruling on admissibility of
the statements as co-conspirator statements until trial.  To the
extent the Court declines at trial to admit the records as co-
conspirator statements, the government reserves its rights to seek
admission of certain CZW records as statements offered not for the
truth of the matter asserted.  Fed. R. Evid. 801.

*Johnson*, 688 F.3d 494, 504 (8th Cir. 2012); <u>United States v. Mallory</u>, 461 Fed. Appx. 352, 356-57 (4th Cir. 2012); <u>United States v. Yeley-Davis</u>, 632 F.3d 673, 679-80 (10th Cir. 2011); <u>United States v. Ellis</u>, 460 F.3d 920, 927 (7th Cir. 2006); <u>United States v. Edwards</u>, 2012 WL 5522157, at *3 (D.D.C. 2012); <u>United States v. Qualls</u>, 553 F. Supp. 2d 241, 246 (E.D.N.Y. 2008)).

Similarly, there is no violation of the Confrontation Clause upon admission of the CZW records as business records, <u>see</u> <u>id.</u> at 976-77, as co-conspirator statements, <u>see</u> <u>United States v. Allen</u>, 425 F.3d 1231, 1235 (9th Cir. 2005) ("[C]o-conspirator statements are not testimonial and therefore beyond the compass of <u>Crawford</u>'s holding."), or if they are admitted not for the truth of the matter, <u>see</u> <u>United States v. Audette</u>, 923 F.3d 1227, 1238 (9th Cir. 2019) (admission of testimonial statements did not violate the Confrontation Clause because they were not offered to prove the truth of the matter asserted).

## V.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant its motion to admit the records from defendant CZW.