TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
POONAM G. KUMAR (Cal. Bar No. 270802)
ROGER A. HSIEH (Cal. Bar No. 294195)
GREGORY D. BERNSTEIN (Cal. Bar No. 299204)
Assistant United States Attorneys
Major Fraud/General Crimes Sections
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0719/0600/3183
     Facsimile: (213) 894-6269
     E-mail:    poonam.kumar@usdoj.gov
                roger.hsieh@usdoj.gov
                gregory.bernstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-282-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE AND LIMIT EXPERT TESTIMONY |
| v. | |
| ZHONGTIAN LIU, <br> aka "Liu Zhongtian," <br> aka "Chairman," <br> aka "Uncle Liu," <br> aka "UL," <br> aka "Big Boss," <br> CHINA ZHONGWANG HOLDINGS LIMITED, <br> aka "ZW," <br> aka "Mother Ship," <br> ZHAOHUA CHEN, <br> aka "Chen Zhaohua," <br> aka "Uncle Chen," <br> XIANG CHUN SHAO, <br> aka "Johnson Shao," <br> PERFECTUS ALUMINIUM Inc., <br> aka "Perfectus Aluminum Inc.," <br> PERFECTUS ALUMINUM ACQUISITIONS, LLC, <br> SCUDERIA DEVELOPMENT, LLC, <br> 1001 DOUBLEDAY, LLC, <br> VON KARMAN – MAIN STREET, LLC, <br>    and | |

10681 PRODUCTION AVENUE, LLC,

    Defendants.

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Poonam G. Kumar, Roger A. Hsieh, and Gregory Bernstein, hereby files its motion <u>in limine</u> to exclude and limit expert testimony.

    This Motion is based upon the attached memorandum of points and authorities, the Declaration of Poonam G. Kumar and the accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 9, 2021        Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

      /s/
POONAM G. KUMAR
ROGER A. HSIEH
GREGORY D. BERNSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Defendants have noticed four experts for trial.  Three of those experts, Dr. Becker, Professor Simon, and John Peterson, were disclosed between July 19, 2021 and August 8, 2021.  The government has requested supplemental information regarding these expert notices and has been provided varied responses.  For the reasons set forth below, the government moves to exclude the testimony of Mr. Peterson and portions of Dr. Becker's testimony.

**II.  LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 16(b)(1)(C), the defense must provide an expert witness's "opinions, the bases and reasons for those opinions, and the witness's qualifications."[1]

In general, an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Id.  "But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Id.  Thus, when an expert reasonably relies on inadmissible information to form an opinion or inference, "the underlying information is not admissible simply because the opinion or inference is admitted."

---

[1] This requirement is triggered after the government complies with its disclosure obligations under Rule 16(a)(1)(G).  The government has done so here.

Fed. R. Evid. 703 committee's notes on 2000 amend. Instead, such "information may be disclosed to the jury, upon objection, only if the trial court finds that the probative value of the information in assisting the jury to evaluate the expert's opinion substantially outweighs its prejudicial effect." Id.

Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." Loeffel Steel Prods., Inc., v. Delta Brands, Inc., 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005). "Although the Rules permit experts some leeway with respect to hearsay evidence, a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 136 (2d Cir. 2013) (citation omitted).

**III. PETERSON'S TESTIMONY SHOULD BE EXCLUDED**

On August 8, 2021, defendants noticed their intention to call John M. Peterson, a lawyer, to testify at trial as an expert. (Declaration of Poonam G. Kumar ("Kumar Decl.") ¶ 2, Ex. A.) The disclosure is deficient under Federal Rule of Criminal Procedure 16(b)(1)(C) because it fails to provide a written summary of his opinions. In addition, based on the little contained within the disclosure, Mr. Peterson's testimony should be excluded because it is irrelevant, confusing, misleading, and more prejudicial than probative.

The disclosure does not identify any opinions to which Mr. Peterson intends to testify to at trial. Rather, it just identifies

topics of testimony, such as, "[t]ariff classification and the proper methods of classifying goods on import", "[t]he relationship between the 2011 AD/CVD Orders and tariff classification", "[t]he 2011 AD/CVD Orders and Scope Reviews of that order, and industry perceptions of the Orders," "[t]he rights and duties of importers, exporters, and manufacturers in relation to their commercial strategies," and "[c]ommon means of enforcement against importers suspected of improperly evading duties." (Kumar Decl. Ex. A.)  Nowhere in the disclosure is there any explanation about what Mr. Peterson may say on these topics or what his opinion about them may be.  Fed. R. Crim. P. 16, adv. comm. note ("The amendment is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.").

   As to the material upon which he will rely for his testimony, in response to the government's questions, defendant proffered that "Mr. Peterson will rely on the 2011 AD/CVD Orders, the 2017 Scope Ruling, and other publicly available scope rulings under the 201[1] AD/CVD Orders." (Kumar Decl. ¶ 7.) Defense counsel then attached approximately seven documents to the email and provided a link to all scope rulings that have been issued related to the 2011 AD/CVD Orders. (Id.)  However, it is entirely clear what Mr. Peterson will rely on those materials to say. See United States v. Georgievski, 2017 WL 6626309, at *1 (D. Nev. Dec. 28, 2017)(Failure to provide "bases and reasons for [] opinions", means the "government is given nothing to help with cross-examination, and [the court] is given nothing to help [it] determine whether these experts can satisfy the

3

Daubert standard.") These general topic areas do not comply with Rule 16's disclosure requirements, and Mr. Peterson's testimony should be excluded for that reason.

Furthermore, based on the little that the government can glean from the disclosure, the proffered areas of Mr. Peterson's testimony are also inadmissible under Rules 401, 403, 703, and 704(b). Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. Fed. R. Evid. 402. A district court has "wide discretion" to exclude irrelevant evidence. United States v. Alvarez, 358 F.3d 1194, 1205 (9th Cir. 2004). Industry perceptions of the AD/CVD orders are plainly irrelevant. What others in unnamed industries perceived about the AD/CVD orders and the Scope Rulings does not bear on whether defendants committed the crimes charged in the indictment. At best, this is an attempt to ask the jury not to convict because of some supposed negative perceptions of the Orders. Similarly, the "common practice[s]" of other importers has no bearing on what these defendants did in this case. For the same reasons, other means of enforcement against importers who are evading liability is a fact of no consequence in this case. An indictment has been returned against these defendants and that there may have been other enforcements options available does not bear on any fact as to defendants' guilt.

Moreover, Mr. Peterson's testimony appears to be an attempt by defendants to have Mr. Peterson testify that defendants did not have the requisite mental state that constitutes an element of the crime

charged. To have a lawyer testify that about the "common practice" in the industry (which is, in and of itself, irrelevant) appears to be an attempt to have the lawyer opine on whether defendants intended to violate the law. Such testimony is explicitly prohibited by Federal Rule of Evidence 704(b). Fed. R. Evid. 704(b)("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.").

As such, the government moves to exclude Mr. Peterson's testimony.

**IV. PORTIONS OF DR. BECKER'S TESTIMONY SHOULD BE EXCLUDED**

On July 19, 2021, defendants provided notice of their intent to call Dr. Brian Becker to testify at trial. That notice was supplemented on August 1, 2021. (Kumar Decl. Exs. B, C.) On July 27, 2021, the government requested additional information regarding the bases for Dr. Becker's testimony. (Kumar Decl. ¶ 5.) While defendants produced in the last few days over about 2,000 pages of material related to Dr. Becker's testimony (Kumar Decl. ¶ 6), defendants have failed to address all of the government's outstanding questions. Upon further questioning, on August 9, 2021, defendants stated they had believed they had complied with all of their discovery obligations as to Dr. Becker. (Kumar Decl. ¶ 7.) As a result, the government moves to exclude certain portions of Dr. Becker's testimony.[2]

---

[2] The government does not believe the entirety of Dr. Becker's testimony is inadmissible, but rather just the parts excerpted herein.

5

Specifically, the government moves to exclude the following statements as their basis is unknown and the testimony is otherwise inadmissible:

- "Due to these orders, China Zhongwang Holdings Ltd. ("CZ", as exporter) could not sell and Perfectus Aluminum, Inc and its predecessor companies ("Perfectus", as importer) could not buy certain aluminum extrusions for resale to U. S. customers, as such sales would not be profitable."
- "Subsequent to the imposition of the AD/CVD orders, CZ designed, constructed and fully assembled, with permanent welding, finished pallets for export from China and importation into the United States."
- "In addition, there is no evidence that any of the imported pallets were the subject of additional assembly, fabrication and/or manufacturing after importation. There is also no evidence that any of the imported finished pallets were disassembled in order for their parts to be sold as extrusions in U.S. commerce."
- "The shipments of finished pallets were declared at the time of importation and were available for inspection by U.S. Customs and Border Control. In addition, shipments were the subject of an audit by U. S. Customs and Border Control in 2015 which concluded that the finished pallets were not subject to the AD/CVD duty rates for extrusions."
- "In the U.S. market, there are existing examples of finished aluminum pallets imported from Chinese manufacturing sources other than CZ and sold under arm's length considerations."

1    - "That is, its business plan to manufacture pallets instead of
2      extrusions after the U.S. ITC result. This plan evolved into
3      selling the pallets at a price that only reflected the value of
4      the aluminum contained in the pallets being resold in the scrap
5      market. This plan was considered in the current market in
6      particular (scrap material with similar pricing to pallets) when
7      CZ engaged in this decision making."

While defendants provided a list of sources relied upon by Dr. Becker, there appears to be no basis in those records for him to testify as set forth above.

Dr. Becker's testimony seems, in part, to be an attempt for defendants to get hearsay into evidence. "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." Marvel, 726 F.3d at 136. Defendants are attempting to have Dr. Becker testify as to what China Zhongwang did, intended to do, and its purported business plan, without any disclosure as to how he knows those purported facts and more importantly, without any relevant connection to his proffered testimony regarding the pricing of aluminum pallets. For example, there is no discernable reason Dr. Becker need testify about whether "CZ designed, constructed and fully assembled, with permanent welding, finished pallets for export from China and importation into the United States", and whether a business "plan was considered in the current market" when testifying about the price of the pallets. Nor is there any reason that Dr. Becker would need testify about the separate expert report of Dr. White who tested the pallets for functionality. (Kumar Decl. C ¶ 7.) Nor should Dr. Becker ever testify as to whether there is or is not evidence of

anything. (See Kumar Decl. Ex. B ¶ 7 ("In addition, there is no evidence that any of the imported pallets were the subject of additional assembly, fabrication and/or manufacturing after importation. There is also no evidence that any of the imported finished pallets were disassembled in order for their parts to be sold as extrusions in U.S. commerce.")) At bottom, the Court should not allow defendants to have Dr. Becker, "under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." Loeffel Steel Prods, 387 F. Supp. 2d at 808.

Most problematically, however, defendants have expressed their intention to have Dr. Becker testify that the effect of China Zhongwang's drop in stock price would have been "immaterial" to large shareholders such as BlackRock. The government moves to preclude Dr. Becker from using the word "immaterial" during his testimony because it is designed to confuse and mislead the jury and any arguable probative value is substantially outweighed by the danger of unfair prejudice. Materiality for purposes of the charges against the defendants has a very precise meaning. The charges against defendants require the government to prove that the statements made by defendants and their co-conspirators were material in that they have the natural tendency to influence or are capable of influencing someone to part with money or property. See Ninth Circuit Model Jury Instructions No. 8.124. The materiality of any loss (which the government is not required to prove and was significant in any event) is not relevant. As such, allowing Dr. Becker to use the word "immaterial", would allow defendants to confuse the jury into believing that Dr. Becker is opining as to the element of materiality

8

in this trial.  He is not, and, therefore, he should be preclude from doing so.

## V. CONCLUSION

    For the foregoing reasons, the government respectfully requests that the Court grant the government's motion.

## DECLARATION OF POONAM G. KUMAR

I, Poonam G. Kumar, declare as follows:

1. I am an Assistant United States Attorney ("AUSA") with the Central District of California. I am assigned to the matter of United States v. Liu, et al., CR 19-282-RGK.

2. Attached hereto as Exhibit A is a true and correct copy of the expert disclosure for John Peterson provided to the government by defendants on August 8, 2021.

3. Attached hereto as Exhibit B is a true and correct copy of the expert disclosure for Brian Becker provided to the government by defendants on July 19, 2021.

4. Attached hereto as Exhibit C is a true and correct copy of the supplemental expert disclosure for Brian Becker provided to the government by defendants on August 1, 2021.

5. On July 27, 2021, the government requested additional information about Brian Becker's proposed testimony.

6. On August 7, 2021, defendants produced approximately 2,402 pages to the government. Over 2,000 of those pages appear to relate to the anticipated testimony of Brian Becker.

7. On August 9, 2021, in response to the government's questions, defense counsel provided additional information. Specifically, counsel stated that defendants believe "they had met their disclosure obligations with regard to Dr. Becker." As to Mr. Peterson, defendants stated that "Mr. Peterson will rely on the 2011 AD/CVD Orders, the 2017 Scope Ruling, and other publicly available scope rulings under the 2017 AD/CVD Orders. A full list of scope rulings under the 2011 Orders can be found at https://enforcement.trade.gov/download/prc-ae/scope/prc-ae-scope-

index.html. Mr. Peterson will also be relying on his expertise as a basis for his testimony." Attached to the email were seven documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on August 9, 2021.

/s/ Poonam G. Kumar

POONAM G. KUMAR