# EXHIBIT B



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*Roger A. Hsieh & Poonam G. Kumar*
*Phone: (213) 894-0600/0719*
*E-mail: Roger.Hsieh@usdoj.gov*

*1100 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*

June 21, 2021

**VIA E-MAIL**

Stephen Larson
Hilary Potashner
Larson LLP
555 S. Flower St., Suite 4400
Los Angeles, CA 90071
HPotashner@larsonllp.com

Robert Ruyak
RuyakCherian LLP
1901 L Street, NW, Suite 700
Washington, DC 20036
robertr@ruyakcherian.com

Re:  United States v. Liu, et al,
     CR No. 19-282-RGK

Dear Counsel:

The government hereby supplements its expert disclosure regarding the testimony of Dr. Torben Voetmann. In addition to the subjects identified in its prior disclosure, the government anticipates that Dr. Voetmann will testify regarding a variety of subjects, including, but not limited to, the following:

- Disclosures related to the financial health and status of the company, including its revenue and gross profit, are relevant to current and prospective investors in determining whether to participate in an IPO, purchase stock, and retain stock. If the revenue of China Zhongwang was inflated in the IPO prospectus or annual reports, that would have been relevant to current and prospective investors. If the revenue generated did not originate from arms-length transactions and/or originated from sales made at the direction of China Zhongwang, that would have been relevant to current and prospective investors. If the revenue generated was funded by or at the direction of China Zhongwang that would have been relevant to current and prospective investors.

- The degree of revenue growth is relevant to current and prospective investors. If there is a decline in growth, the reason for that decline and the plans the company may have to address the decline would be relevant to current and prospective investors.

- The breakdown of revenue is relevant to current and prospective investors. For China Zhongwang, the amount of revenue and revenue growth generated from overseas markets, including the United States, would have been relevant to current and prospective investors. If the revenue generated from overseas markets, including the United States, was inflated, that would have been relevant to current and prospective investors. If the

revenue generated from overseas markets, including the United States, did not originate from arms-length transactions and/or originated from sales made at the direction of China Zhongwang, that would have been relevant to current and prospective investors. If the revenue generated from overseas markets, including the United States, was funded by and/or generated at the direction of China Zhongwang that would have been relevant to current and prospective investors. China Zhongwang's explanations for the decline and growth of revenue generated from overseas markets, including the United States, would have been relevant to current and prospective investors. If the explanations for the growth in revenue, including, but not limited to, the demand for certain products, were not true, that would have been relevant to current and prospective investors.

- For China Zhongwang, the existence of new product lines and new markets for the company's products would have been relevant to current and prospective investors, as would the amount of revenue and revenue growth originating from these new product lines and new markets. China Zhongwang's statements about the revenue and potential revenue from the deep-processed product line, including from the sale of those products in the United States, would have been relevant to current and prospective investors. If the statements made by China Zhongwang about the demand and the market growth potential for these products were not true, that would have been relevant to current and prospective investors. If the revenue generated from these sales was inflated, that would have been relevant to current and prospective investors. If the revenue generated from these sales did not originate from true sales and/or originated from sales made at the direction of China Zhongwang, that would have been relevant to current and prospective investors. If the revenue generated from these sales was funded by and/or generated at the direction of China Zhongwang that would have been relevant to current and prospective investors.

- The amount of related party transactions, including the amount sold to related parties, is relevant to current and prospective investors. If the amount of related party transactions was higher than reported in the China Zhongwang annual reports, that would have been relevant to current and prospective investors. Current and prospective investors would want to know about non-arms length transaction because non-arms-length transactions may allow a company to sell a product or service at a price higher than the fair market price, thereby increasing the company's revenue and gross profit. If the statements about related parties in the annual reports were not true, that would have been relevant to current and prospective investors.

- If the $200 million loan provided to Chinaz Zhongwang during the IPO was from a related/connected party, then that would have been relevant to current and prospective investors. If China Zhongwang misrepresented the status of the entity/person providing the loan, that would have been relevant to current and prospective investors. If China Zhongwang or its leadership funded the $200 million loan, that would have been relevant to current and prospective investors.

- If China Zhongwang made misrepresentations in specific disclosures about related parties and allegations against the company and in connection with the suspension and

June 20, 2021
Page 3

> resumption of trading, these would have been relevant to current and prospective investors.

- If China Zhongwang had undisclosed liabilities of over $1 billion, that would have been relevant to current and prospective investors.

- A review of China Zhongwang's stock price movement demonstrates that there have been several statistically significant negative price movements that cannot be explained by the market and industry of China Zhongwang.  These price movements include, for example, movements after the following disclosures:  (1) the 2009 disclosure about the Economic Observer article relating to major customers (September 15, 2009); (2) the February 2010 disclosure about the inability of Ernst and Young to confirm that major customers were independent third parties (February 8, 2010); and (3) the August 2015 disclosure related to the Dupré Report's allegations (August 12, 2015).  The government anticipates that Dr. Voetmann will explain what caused these negative price movements and that he will testify that there is a less than a 5% chance that the price movements on those days are not explained by these disclosures.  The government also anticipates that Dr. Voetmann will testify that, based on his analysis, if other negative information regarding China Zhongwang's related party transactions had been disclosed to the market, he has no reason not to believe a similar negative price movement would have occurred.

- It would be relevant to current and prospective investors if China Zhongwang had made any knowing false statement in its IPO prospectus or annual reports.

The government will continue to disclose, either by letter or through production of Reports of Investigation, details about Dr. Voetmann's anticipated testimony.

With this letter the government reiterates its request for all reciprocal discovery to which it is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.  In particular, the government is requesting defendants' notice of expert testimony, if any.

Please let me know if you have any questions or would like to further discuss any of the matters raised above.

Very truly yours,

*/s/ PN*

POONAM G. KUMAR
ROGER A. HSIEH
GREGORY BERNSTEIN
Assistant United States Attorneys
Major Frauds Section